IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK C. CAPPETTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 4583 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case arises out of a $544,951.50 tax assessment against Frederick C. Cappetta imposed by the Internal Revenue Service (IRS) under Section 6672 of the Internal Revenue Code. Cappetta originally filed this suit seeking a refund of $1,150 in taxes he purportedly overpaid in April 2003. The United States responded by filing a counterclaim alleging that Cappetta, as chairman of the board of directors of Wisconsin Color Press, Inc. (WCP), willfully failed to pay $544,951.50 in taxes withheld from the wages of his employees during the fourth quarter of 2001. The United States has moved for summary judgment on all claims. For the following reasons, the Court grants the motion.

**Factual Background**

During 2001 and 2002, Cappetta was the chairman of the board of directors and chief executive officer of WCP, a printing company located in Milwaukee, Wisconsin that once employed over 500 employees. In his role as CEO, Cappetta was the "principal executive officer of the corporation[,] and the day to day operation of the corporation [was] his duty and responsibility." *See* Def. Ex. 21. Consistent with the mandates of the board of directors,

Cappetta was authorized to "execute for the corporation certificates for its shares, and any contracts, deeds, mortgages, bonds, or other instruments which the board of directors . . . authorized to be executed." *Id.*

Throughout 2001, particularly in the last quarter of that year, WCP experienced financial difficulties due to a substantial drop in printing sales. As a result, it had difficulty paying off creditors and neglected to pay to the government federal income, Social Security, and Medicare taxes withheld from the wages of WCP employees. According to an IRS Form 941 filed by the company on January 31, 2002, WCP owed $781,613.72 in unpaid employment taxes during the fourth quarter of 2001. Cappetta learned of the unpaid taxes, at the latest, on February 7, 2002.

On February 8, 2002, Internal Revenue Officer Lillie Johnson called Jeff Wilcott, WCP's Chief Accountant, to set up an appointment to discuss a resolution of the company's non-payment. On March 6, 2002, Johnson met with Cappetta, Wilcott, and Ken Maynor, WCP's vice president of finance, and the parties agreed that WCP would pay its unpaid taxes in weekly installments of $20,500 over a period of nine months. As it happened, WCP only made one payment of $20,500 before it filed a bankruptcy petition, signed by Cappetta as CEO of WCP, on March 15, 2002.

After WCP filed for bankruptcy, the IRS took no further action against the company with respect to the unpaid balance for the fourth quarter of 2001. It did, however, attempt to recoup the taxes by assessing a "trust fund recovery penalty" against Cappetta individually. He received a letter from the IRS on or around April 8, 2002 advising him that, as a person who was required to collect, account for, and pay employment taxes for WCP, the IRS planned to assess a $619,241.03 penalty against him, recoverable as though he himself owed the tax.

2

Cappetta responded to the April 8, 2002 letter by contesting the amount of tax assessed. He argued that the IRS should reduce his individual tax liability by $74,289.44 because WCP made several payments toward its fourth quarter of 2001 tax liability for which the IRS did not properly account. After considering Cappetta's response, the IRS agreed that it had over-assessed Cappetta's liability and, by letter dated August 18, 2004, notified Cappetta of a partial abatement of the penalty. His adjusted liability was thus lowered to $544,951.50.

Cappetta maintains that he should not be held responsible for this adjusted figure because, among other reasons, he suffered from serious health problems during the sixth months prior to the company's bankruptcy filing and was minimally involved in WCP's operations. He submits the affidavit of his treating physician, Michael F. Vosicky, who says that in January 2002, Cappetta weighed over 360 pounds; suffered from abnormally high blood pressure, diabetes, and sleep deprivation; and complained of being overwhelmed by his infirmities. Dr. Vosicky also says that between November 1999 and August 2002, Cappetta "was progressively losing physical stamina and mental acuity." Vosicky Aff. ¶10.

## Discussion

The Internal Revenue Code requires employers to withhold sums from their employees' paychecks to pay various federal taxes. The employers hold the collected amounts in trust for the United States and must pay them quarterly to the IRS. *See United States v. Kim*, 111 F.3d 1351, 1356 (7th Cir. 1997). Under 26 U.S.C. § 6672(a), responsible individuals who willfully fail to pay such taxes may be held personally liable for any unpaid amounts. Once the government assesses a penalty under this statute, the individual against whom the penalty was assessed bears the burden of proving either that he was not a responsible person or that the

3

failure to remit the withheld taxes was not willful. *See Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994).

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In this case, the government argues that it is entitled to judgment as a matter of law because Cappetta has not shown the existence of a genuine issue of material fact with respect to his status as a responsible person or his willful failure to pay the taxes in question. In response, Cappetta denies that he was a responsible person and denies that he acted willfully. He also argues that the IRS violated his federal and state constitutional rights; that the IRS incorrectly calculated the amount of assessed taxes and failed to give him proper notice of his potential liability; that the IRS improperly "forced corporate payment for the quarter ended December 31, 2001"; and that by ignoring his protest letter, the IRS deprived him of his right to have his actions reviewed within the IRS.[1]

The Court begins by considering whether Cappetta has presented evidence from which a jury reasonably could find that he was not a responsible person as defined by § 6672. A person is responsible under this section if he is "so connected with a corporation as to have responsibility and authority to avoid the default which constitutes a violation of [§ 6672]." *See*

---

[1] Cappetta also argues that the IRS wrongly seeks to recover interest on the assessed employment taxes. Though 26 U.S.C. § 6404 authorizes the abatement of interest attributable to the unreasonable errors of IRS employees, only the Tax Court has jurisdiction to determine whether "the Secretary's failure to abate interest . . . was an abuse of discretion." 26 U.S.C. § 6404(h). Thus, the Court is without jurisdiction to consider this contention.

*Monday v. United States*, 421 F.2d 1210, 1214 (7th Cir. 1970). In making this evaluation, courts consider whether the individual held corporate office, owned stock in the company, served on the board of directors, was authorized to sign checks, and controlled corporate financial affairs. *See Kim*, 111 F.3d at 1362. As the Fifth Circuit discussed in *Gustin v. United States*, 875 F.2d 485, 492 (5th Cir. 1989), the touchstone of responsible person liability under § 6672 is the common law concept of actual authority: a responsible person is someone the corporation entrusts to pay the taxes in question.

To avoid summary judgment, then, Cappetta must offer some evidence suggesting that he did not have the "responsibility and authority" to avoid this default. *See Monday*, 421 F.2d at 1214. It is undisputed that during the fourth quarter of 2001, Cappetta held a corporate office, owned substantial stock in Mid Continent Inc. (the holding company that owned ninety-nine percent of the stock in WCP), was one of two directors, possessed authority to sign checks, and, under the powers outlined in the company's by-laws, possessed substantial control over WCP's financial affairs. *See* Def. Exs. 19, 21, 32, 50, 51, 52.

Cappetta argues that he was not a responsible person because "he relied on Ken Maynor . . . and Jeffrey Wilcott . . . to correctly compute and remit withholding taxes." Pl. Resp. at 6. To put it another way, he contends he should not be held liable for the unpaid tax because other employees were primarily responsible for day to day financial activities. This argument ignores Seventh Circuit authority making it clear that "the delegation of disbursal authority or power does not relieve the delegator of liability." *United States v. Charlton*, 2 F.3d 237, 240 (7th Cir. 1993); *see also Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992). In *Bowlen*, the

5

plaintiffs similarly argued that they were not responsible persons because they delegated the daily operations of the company to another individual. The court rejected the argument and stated as follows:

> The Bowlens remained responsible persons during the third and fourth quarters of 1983. They retained their ownership interest in the corporation. They remained officers and directors of the corporation. They remained authorized signatories on corporate checks and admitted that they continued to sign checks paying creditors other than the United States during the third and fourth quarters of 1983. They signed notes on behalf of Cinco Drilling during the third and fourth quarters of 1983. In short, in spite of David Briggs' control, they held sufficient control over the financial affairs of Cinco Drilling to ensure that other creditors were not preferred while the back taxes remained unpaid.

As in *Bowlen*, Cappetta – despite his delegation of financial matters – retained the authority to pay the taxes in question rather than paying other creditors. He was the CEO and one of two directors; he had signatory authority on WCP's general, operating, and payroll accounts at the Bank of Waukegan; and he borrowed millions of dollars on WCP's behalf. The fact that he delegated some of his powers to others did not affect his authority to pay creditors. For these reasons, Cappetta has not offered evidence from which a jury reasonably could find that he was not a responsible person under § 6672.

The Court next considers whether Cappetta has presented evidence from which a jury reasonably could find that he did not act willfully. Willfulness, for purposes of § 6672 liability, means "a voluntary, conscious, or intentional decision not to remit to the government funds properly withheld." *Bowlen*, 956 F.2d at 729. "'In the case of individuals who are responsible persons both before and after withholding tax liability accrues . . . there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability . . . constitutes willfullness.'" *Kim*, 111 F.3d at 1362 (quoting *Mazo v. United States*, 591 F.2d 1151 (5th Cir. 1979)).

In *Kim*, the defendant was one of three co-owners of a corporation that failed to pay federal employee withholding taxes. *Id.* He acquired knowledge of the unpaid tax liability in November 1989, and during December 1989, his company acquired unencumbered funds to satisfy that liability. *Id.* Because the funds were used to pay creditors other than the United States, the court upheld the trial court's ruling that Kim acted willfully as a matter of law.

Cappetta admits that he knew about WCP's unpaid taxes on February 7, 2002. Cappetta Dep. at 212. After that date, WCP deposited $2,731,245 in its general checking account at the Bank of Waukegan. *See* Def. L.R. 56.1 Stmt. ¶175. There were no restrictions on those funds, and they were, in large part, transferred to WCP's operating account to pay vendors and to its payroll account to pay employees. *See id.* ¶176. As in *Kim*, this evidence is sufficient to render Cappetta's conduct willful as a matter of law. He had knowledge of unpaid taxes and failed to use his authority to make sure the debt was paid ahead of other creditors.

Cappetta argues that after February 7, 2002, a dramatic decline in health prevented him from making the requisite payments to the government. This argument is not unprecedented. In two other reported cases, courts have held that a responsible person's illness created a genuine issue of material fact with respect to the issue of willfulness under § 6672. In *Young v. United States*, 609 F. Supp. 512, 518 (N.D. Tex. 1985), one of the plaintiffs had suffered a stroke, and the court held that the plaintiff's lack of participation in corporate affairs prevented entry of summary judgment on the issues of willfulness and responsible person status. In *Sherwood v. United States*, 246 F. Supp. 502, 508 (E.D.N.Y. 1965), though the court did not identify the plaintiff's specific illness, it nevertheless held that his failure to withhold and pay employment taxes was not willful because he "was not in a position to act with respect to the corporation's

7

financial condition or to make any decisions concerning payment to creditors."

Cappetta has offered evidence that in early January 2002 he weighed 360 pounds; suffered from abnormally high blood pressure, diabetes, and sleep deprivation; lacked stamina; and complained of being overwhelmed by his illnesses. Though these were serious health problems, Cappetta – unlike the plaintiff in *Young*, who suffered a debilitating stroke – has not presented evidence that his illness was so incapacitating that it prevented him from issuing checks. Indeed, if every corporate CEO could avoid § 6672 liability by alleging sleep deprivation and lack of stamina, the IRS would be largely incapable of recovering under this statute. Absent evidence that Cappetta's health problems severely limited his ability to work, no jury reasonably could find that his failure to pay employment taxes was not willful.

Cappetta next argues that by assessing this tax liability against him, the IRS violated his rights under the Eighth Amendment of the United States Constitution to be free from excessive fines and from cruel and unusual punishment.[2] The Eighth Amendment, however, is only triggered when the government seeks to punish an individual, not when it seeks to recover a loss, s*ee United States v. Bajakajian*, 524 U.S. 321, 329 (1998), and a § 6672 assessment is not punitive. *See In re Goldston*, 104 F.3d 1198, 1200 (10th Cir. 1997). Rather, it is a purely remedial statute that seeks to recover from a responsible person an amount of money equal to the government's lost tax revenue. *Id.* ("'[a]lthough denominated a penalty, the liability imposed by § 6672 is not penal in nature, since it brings to the government only the same amount to which it was entitled by way of the tax.'") (quoting *Olsen v. United States,* 952 F.2d 236, 238-39 (8th Cir.

---

[2] Cappetta also argues that the IRS violated his rights under the Illinois constitution. The Illinois constitution, however, cannot trump the right of the United States to recover taxes. *See United States v. Rodgers*, 461 U.S. 677, 701-02 (1983).

1991)); *Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir. 1970) ("[Section 6672's] basic purpose is the protection of governmental revenue."). Consequently, the assessment does not violate the Eighth Amendment.

Cappetta next argues that the IRS incorrectly calculated the amount of assessed taxes. Tax assessments are presumptively correct. *See Hefti v. IRS*, 8 F.3d 1169, 1172 (7th Cir. 1993). To rebut this presumption, Cappetta must introduce evidence that suggests the assessments were improperly calculated. *Id.* He attempts to do so by arguing that he never received a Form 4340 and that, in any case, the forms he received contained no date. The government's first exhibit, however, establishes that Cappetta received a dated Form 4340, which sets out the amount of taxes due as $619,241. *See* Def. Ex. 1. The amount of assessed tax was later reduced, at Cappetta's insistence, to $544,950. Cappetta fails to offer any other evidence that puts the government's assessment in doubt.

Cappetta next argues that he did not receive proper notice of the assessment as required by 26 U.S.C. § 6672(b)(1), which states, "No penalty shall be imposed under subsection (a) unless the Secretary notifies the taxpayer in writing . . . that the taxpayer shall be subject to an assessment of such penalty." The issue of whether the IRS properly complied with § 6672 is a question of law. *See United States v. Bisbee*, 245 F.3d 1001, 1006 (8th Cir. 2001). Though Cappetta claims in his brief that the government did not notify him of an actual assessment, the government provides an undated letter, which Revenue Officer Johnson testified she mailed to Cappetta via certified mail sometime in 2002 and which Cappetta does not deny he received.[3]

---

[3] The government provides a certified mail receipt signed by Cappetta's wife dated April 8, 2002.

The letter advised Cappetta that it planned to assess a penalty against him in the amount of $619,241.03.

Latching onto the word "plan," Cappetta argues that the IRS's letter did not satisfy § 6672(b)(1)'s requirement that the government notify a taxpayer that he "shall be subject to such a penalty." The use of the word "plan" rather than the word "shall," however, did not materially affect the meaning or import of the 2002 letter. It gave Cappetta ample notice that he would "be subject to an assessment of such penalty" and was therefore sufficient to meet the requirements of the statute.

Cappetta next argues that the IRS improperly "forced corporate payment for the quarter ended December 31, 2001" by requiring WCP to denominate certain tax payments originally made during the fourth quarter of 2001 as payments against its tax liability for the first quarter of 2002. In other words, he argues that he did not act willfully because the IRS forced WCP to transfer some of its credited 2001 tax payments to 2002. This argument is without merit. The undisputed evidence demonstrates that the IRS did not require 2001 tax payments to be transferred as such, but only required WCP to be current on its 2002 tax liability before allowing it to pay off its 2001 tax liability in weekly installments, a practice well within the discretion of the IRS. *See PCT Servs., Inc. v. United States*, No. 02CV2085-BBM, 2003 WL 21541283, *4 (N.D. Ga. May 19, 2003) ("Where an employer is not in current compliance with its federal employment tax obligations, a settlement officer does not abuse its discretion by declining to consider settlement alternatives). Cappetta has not cited, and the Court has not found, a single case suggesting that such a practice affects a responsible person's § 6672 liability. As a result, the Court rejects the argument.

Cappetta finally argues that by ignoring his protest letter, the IRS deprived him of "his right to have [Revenue Officer Johnson's] actions reviewed within the IRS." He fails to articulate, however, which of Revenue Officer Johnson's actions needed to be reviewed, how those actions were relevant to his tax liability in this case, or what case law establishes such a right of review. This undeveloped argument is forfeited. *See Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 862 (7th Cir. 2005); *see also Brasic v. Heinemann's, Inc.,* 121 F.3d 281, 285 (7th Cir. 1997) ("We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 16]. The Court's determination that plaintiff is liable under 26 U.S.C. § 6672 requires entry of judgment against him on his claim for recovery of taxes and on the government's counterclaim. The Clerk is directed to enter judgment in favor of the defendant on the plaintiff's claim, and in favor of the defendant on its counterclaim in the amount of $543,801.59, plus statutory interest from March 24, 2003. Defendant is granted leave to file, on or before January 19, 2006, a motion to amend the judgment to include the specific amount of interest due.

_____
MATTHEW F. KENNELLY
United States District Court

Date: January 9, 2006